TINACO PLAZA, LLC *v.* FREEBOB'S, INC.
(AC 21992)

Flynn, Bishop and Landau, Js.

Argued September 24, 2002—officially released February 4, 2003

*Lloyd L. Langhammer*, for the appellant (defendant).

*Kevin J. Burns*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. In this summary process action, the trial court granted the motion for summary judgment filed by the plaintiff, Tinaco Plaza, LLC. The issues before us are whether the court properly determined that, pursuant to General Statutes § 47a-26d,[1] (1) the plaintiff was entitled to possession of the premises and (2) the special defenses alleged by the defendant were inapplicable to the cause of action and facts here. We affirm the judgment of the trial court.

There is no disagreement as to the following facts. In 1985, the plaintiff's predecessor in title leased the premises at 273 Clarks Fall Road in North Stonington to the defendant's predecessors in interest. The lease was for a ten year term and provided the option of renewal for two additional five year terms.[2] About the

[1] General Statutes § 47a-26d provides: "If, on the trial of a summary process complaint it is found that the defendant is the lessee of the complainant and holds over after the termination of the lease or rental agreement or, if there was no lease or rental agreement, that the defendant is the occupant of such premises and has no right or privilege to occupy the same and that notice to quit has been given as provided in this chapter, yet that the defendant holds possession or occupancy after the expiration of the time specified in such notice to quit, and the defendant does not show a title in himself which accrued after the giving of the lease or rental agreement, if any, or *if the defendant does not show a title in himself existing at the time the notice to quit possession or occupancy was served upon him*, the court shall forthwith enter judgment that the complainant recover possession or occupancy of the premises with his costs, and execution shall issue accordingly subject to the provisions of sections 47a-35 to 4a-41, inclusive." (Emphasis added.)

[2] The lease states in relevant part: "And it is further agreed that in case the said Tenant shall, with the written consent of the said Landlord endorsed hereon, or on the duplicate hereof, at any time hold over the said premises, beyond the period above specified as the termination of this lease, then the said Tenant shall hold said premises upon the same terms, and under the

time that the original lease was signed, the defendant obtained rights to the leasehold. In May, 1995, the defendant and the plaintiff's predecessors signed an amendment to the lease that memorialized the defendant's right to an additional five year term and included, among other things, the rent to be paid for the additional five year term, through April 30, 2000. One of the covenants contained in the amendment concerned an option to renew the lease for yet another five year term.[3] The plaintiff purchased the premises in 1996.

same stipulations and agreements as are in this instrument contained, and no holding over by said Tenant shall operate to renew this lease without such written consent of said Landlord."

The lease further states in relevant part: "ADDITIONAL OPTIONS

"If this lease is not in default nor has been cancelled at the expiration of the prime leased terms as contained herein, at the expiration of the term of this lease (April 30, 1995) the Tenant shall have the further option to renew said lease for Two further periods of Five years each from said date upon the same terms and conditions except that annual rental for said additional terms is to be negotiated by the parties, provided, however, that notice of said intention to renew shall be given to the Landlord on or before October 31, 1994."

[3] The amendment to the lease states: "This Amendment made and executed this 2nd day of May, 1995, by and between [the plaintiff's predecessor] (hereinafter referred to as the Landlord) and [the defendant] (hereinafter referred to as the Tenant).

"Witnesseth:

"WHEREAS, Landlord and Tenant are parties to certain Lease made and executed on April 25, 1985, and a certain Assignment of Lease dated April 23, 1985, relating to certain premises located within the Plaza Trust Stop in North Stonington, Connecticut, all as more particularly described therein; and

"WHEREAS, Landlord and Tenant entered into a certain Amendment of Lease made and executed on June 27, 1994, (the foregoing Lease, Assignment of lease and Amendment of Lease, copies of which are attached hereto, hereinafter collectively referred to as the 'Lease'); and

"WHEREAS, the Lease provides that at the expiration of the term of the Lease on April 30, 1995, 'the Tenant shall have the further option to renew said Lease for two further periods of five (5) years each'; and

"WHEREAS, the parties desire to set forth herein their agreement concerning the exercise of the aforesaid option to renew.

"NOW, THEREFORE, Landlord and Tenant hereby agree as follows:

"1. The Landlord and Tenant agree that the first option to renew the Lease shall be and hereby is exercised to be effective for the period from [M]ay

By letter dated July 30, 1999, the defendant attempted to exercise its option to renew the lease for an additional five year term. The plaintiff rejected the defendant's attempted renewal. In 2000, unlike the events that transpired in May, 1995, the parties did not memorialize an agreement concerning the defendant's desire to exercise its option to renew, and they did not negotiate the rental for an additional five year term. On May 4, 2000, the plaintiff caused a notice to quit the premises by May 12, 2000, to be served on the defendant. Although the time given in the notice to quit has passed, the defendant continues in possession of the premises.

---

1, 1995, through April 30, 2000. During said renewal term the sole rental payable by the Tenant to the Landlord under the Lease (in lieu of any other fixed or percentage rental amounts otherwise specified in the Lease) shall be as follows:

"(A) During the first year of the renewal term (May 1, 1995 through April 30, 1996) annual rental shall be $67,600.00 payable weekly in equal installments of $1,300.00 each on the first day of each week;

"(B) During the second year of the renewal term (May 1, 1996, through April 30, 1997) annual rental shall be $70,200.00 payable weekly in equal installments of $1,350.00 each on the first day of each week;. and

"(C) During the third year of the renewal term (May 1, 1997, through April 30, 1998) annual rental shall be $72,800.00 payable weekly in equal installments of $1,400.00 each on the first day of each week;

"(D) During the fourth year of the renewal term (May 1, 1998, through April 30, 1999) annual rental shall be $75,400.00 payable weekly in equal installments of $1,450.00 each on the first day of each week;

"(E) During the firth year of the renewal term (May 1, 1999, through April 30, 2000) annual rental shall be $78,000.00 payable weekly in equal installments of $1,500.00 each on the first day of each week;

"2. *With respect to the Tenant's option to renew the Lease for an additional period of five (5) years (from May 1, 2000, to April 30, 2005) as provided in the Lease, the Tenant shall be required to exercise same by notice of intention to renew given to the Landlord on or before October 31, 1999.*

"3. In consideration of the foregoing, it is further agreed and made a part of this agreement, that the Tenant shall begin a 'cosmetic' interior renovation of the restaurant premises on or before April 30, 1996. This renovation is to be completed on or before April 30, 1997.

"4. Except as expressly modified and amended pursuant to the terms of this Amendment, all other covenants and agreements provided for in the Lease shall remain in full force and effect and continue to govern the parties." (Emphasis added.)

In June, 2000, the plaintiff commenced a summary process action against the defendant seeking immediate possession of the premises. The plaintiff subsequently amended its complaint, which was in three counts. The factual allegations of the complaint are consistent with the undisputed facts. The first count sought possession of the premises on the basis of termination of the lease by lapse of time. The second count sounded in breach of contract, and the third count alleged waste on the premises, unauthorized alterations, injury, misuse and termination by expressed stipulation in the lease. The defendant answered the complaint and alleged a number of special defenses, including the equitable doctrine of laches, equitable forfeiture and promissory estoppel.

At the time it filed its amended complaint, the plaintiff also filed a motion for summary judgment. The defendant objected to the motion for summary judgment. The plaintiff sought summary judgment in its favor on the basis of the allegations in the first count of its amended complaint. Specifically, the plaintiff claimed that the lease has expired, that there is no new lease and that notice to quit was served properly on the defendant. The defendant objected, arguing that it was entitled to remain in possession of the premises pursuant to the renewal option contained in the original lease. The parties disagree as to whether the renewal option was enforceable, as a matter of law, because it required the amount of rent due during the second five year term, if any, to be negotiated after the defendant had exercised its right pursuant to the option to renew.

The court did not reach the issue of enforceability, concluding, on the basis of the undisputed facts, that the plaintiff was entitled to summary judgment regardless of the enforceability of the renewal clause. That is, as a matter of law, the defendant was unable to demonstrate that it had title in the premises at the time the notice to quit was served. Specifically, the court

concluded, citing *Platt* v. *Cutler*, 75 Conn. 183, 52 A. 819 (1902), that the defendant's notice of its intention to renew the lease did not renew the lease because the language of the lease renewal clause required the written consent of the plaintiff if the defendant held over, or the negotiation of the rent due under the new five year term. The term of the amended lease had expired, there was no signing by the plaintiff permitting the defendant to hold over and there was no new lease. The court also concluded, as a matter of law, that the special defenses addressed by the defendant in its brief in support of its objection to the motion for summary judgment were inapplicable to the facts of this summary process action.

"On appeal, the scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact [and] a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) *Richter* v. *Danbury Hospital*, 60 Conn. App. 280, 286, 759 A.2d 106 (2000). "To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or brief." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

With respect to a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings." (Citations omitted; internal quotation marks omitted.) *Brunswick* v. *Safeco Ins. Co.*, 48 Conn. App. 699, 703, 711 A.2d 1202, cert. denied, 247 Conn. 923, 719 A.2d 1168 (1998). Summary judgment should be denied if the defendant "raises at least one legally sufficient defense that would bar the plaintiff's claim . . . ." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985).

I

We first consider whether the court properly determined that the plaintiff was entitled to possession of the premises because the defendant could not show evidence of title in itself at the time the notice to quit was served.[4] See General Statutes § 47a-26d. "The ulti-

[4] The defendant's statement of the issues on appeal states in relevant part: "Did the court err in granting summary judgment in favor of the plaintiff?" In its brief, the plaintiff argued that we should not consider the claim because the statement of the issue is too broad and that we should not consider several of the defendant's arguments on appeal regarding the court's construction of the contract because they were not raised in the trial court. In the trial court, the defendant argued against the granting of the motion for summary judgment on the basis of the validity of the renewal covenant in the lease, the propriety of the manner in which it exercised its option to renew the lease and three of the special defenses it alleged.

In its brief on appeal, the defendant challenges the validity of the court's rendering judgment on the basis of General Statutes § 47a-26d, certain case law and the unambiguous language of the lease and its amendment. It also challenges the court's construction of the lease and its amendment. Although the defendant's statement of the issue on appeal may be less than precise, there is no surprise or prejudice to the plaintiff. The central issue on appeal is no different from the one in the trial court.

We will review the propriety of the court's judgment on the basis by which it was decided, whether the defendant could show title in the premises pursuant to § 47a-26d. We will not consider the enforceability of the renewal covenant as it is irrelevant to the plaintiff's right of possession, as the court concluded.

mate issue in a summary process action is the right to possession." *Southland Corp.* v. *Vernon,* 1 Conn. App. 439, 443, 473 A.2d 318 (1984).

"A lease is a contract. In its construction, three elementary principles must be kept constantly in mind: (1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Halcho Corp.* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985). In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties. *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 682, 102 A.2d 875 (1954)." (Internal quotation marks omitted.) *Warner Associates* v. *Logan,* 50 Conn. App. 90, 94–95, 718 A.2d 48 (1998).

The issue in the case before us can be stated succinctly as whether the contract called for an extension of the existing lease or a renewal of the lease. "It is the general rule that no new lease is necessary upon exercising an option for the extension of the term of the lease for a further specified period after the expiration of the original term, and many courts apply the same rule in the case of options for renewal. . . . The view has been taken that a lease for a specified term with the privilege of a renewal on the same terms is equivalent, where such privilege is exercised, to a demise for the full period of the two terms, without any necessity for the execution of a new lease, and this would seem to be the view which a court of equity would take in case the rights of the lessee under the

privilege of renewal is there called in question, as equity regards that as done which ought to be done. . . .

"A technical difference is frequently recognized, however, between the effect of a covenant for renewal and one for extension, especially as to the effect of retention of possession after the original term, it being held that a stipulation for renewal does not, like a covenant to extend, of itself and alone continue the tenancy for the renewal period, but calls for a new lease, a formal extension of the existing lease or something equivalent thereto, performance by the lessee of everything required for him to entitle him to a new lease, or, at least, some affirmative act by way of creation of an additional term. . . . But it is recognized that the technical difference may be controlled by the intention of the parties as manifested by the entire lease or *by their practical construction of their contract, as by conduct before the controversy arose,* whereby the privilege may be construed as one for an extension of term, though the language employed, in a strict technical sense, may signify renewal. The mere fact that the privilege is called one to renew is not conclusive." (Citations omitted; emphasis added; internal quotation marks omitted.) *Ackerman* v. *Loforese,* 111 Conn. 700, 703–704, 151 A. 159 (1930).[5]

On the basis of our plenary review of the amended complaint, answer and special defenses, the lease and

[5] The rule has been cited in our case law for more than eighty years. See, e.g., *Didriksen* v. *Havens,* 136 Conn. 41, 44–45, 68 A.2d 163 (1949); *Blanck* v. *Kimland Realty Co.,* 122 Conn. 317, 318–19, 189 A. 176 (1937); *Johnson* v. *Mary Oliver Candy Shops, Inc.,* 116 Conn., 86, 89, 163 A. 606 (1933); *W.G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 288–89, 158 A. 548 (1932); *Freiheit* v. *Broch,* 98 Conn. 166, 171, 118 A. 828 (1922); *City Coal Co.* v. *Marcus,* 95 Conn. 454, 111 A. 857 (1920); *David A. Altschuler Trust* v. *Blanchette,* 33 Conn. App. 570, 572, 636 A.2d 1381, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994); *Seven Fifty Main Street Associates Ltd. Partnership* v. *Spector,* 5 Conn. App. 170, 171–72, 497 A.2d 96, cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985).

its amendment, and documents and affidavits submitted with respect to the summary judgment motion, we agree with the court that the defendant had no right of possession in the premises at the time the notice to quit was served. In reaching that conclusion, we have adhered to the rule that the technical distinction between a covenant to extend or to renew can be ascertained "by the intention of the parties as manifested . . . by their practical construction of their contract, as by conduct before the controversy arose . . . ." Id., 704.[6]

The original lease provided that holding over by the defendant will not renew the lease without the written consent of the plaintiff. The plaintiff has not consented in writing to the defendant's remaining in possession after April 30, 2000. Furthermore, the lease amendment

---

[6] The dissent has taken the position that the majority has decided a genuine issue of material fact, although not in those words. See footnote 4. "While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 591, 715 A.2d 807 (1998).

The complaint, the lease and the amendment were before the court. There was no disagreement about what the parties did in 1995 to renew the lease. They signed an amendment to the lease. In opposition to the motion for summary judgment, the defendant contended that there was a disagreement about the intent of the parties. The trial court made its determination on the basis of the language in the lease. All of the evidence was before the trial court, which determined that according to the language of the lease, to remain on the premises, the defendant needed a writing. The majority agrees, but in response, the dissent points out that the distinction between renewal and extension is vague and that the conduct of the parties is determinative. The majority agrees with that proposition of law.

Appellate review of a motion for summary judgment is plenary. The parties do not disagree that they negotiated rent and signed an amendment for the five year renewal in 1995. The parties' behavior was what it was; there is nothing ambiguous about it. In view of our case law, cited by the dissent, there is no evidence that could be presented at a trial that could change the outcome. Consequently, the majority has not engaged in fact-finding, as there was no genuine issue of material fact that a writing was needed to renew the lease in 1995. See id., 589–95.

unambiguously provides for the expiration of the lease and requires the negotiation of a new rent as a prerequisite to the defendant's continued possession of the premises. The amendment of lease signed in May, 1995, is instructive. The preliminary statements set forth the context of the agreement, they acknowledge the original lease and its assignments, the option to renew and the parties' "desire to set forth [therein] their agreement concerning the exercise of the aforesaid option to renew." Furthermore, paragraph one of the amendment contains a detailed agreement as to the amount and manner in which rent is to be paid for the five years of the lease. Because the parties executed a signed agreement with respect to the option in 1995 and negotiated the rent to be paid, we conclude that the lease and the amendment provided a covenant to renew that required a writing. For that reason, the trial court properly concluded that the defendant had no right to possession after the five year leasehold expired in 2000. Furthermore, the plaintiff served notice to quit on the defendant and initiated a summary process action as soon after the end of the five year lease as was permissible.

Our construction of the terms of the lease and the amendment are consistent with our case law. See *Platt* v. *Cutler*, supra, 75 Conn. 186 ("The lease was for the term of one year only, and the year had expired. The agreement for renewal conveyed no right nor interest in the premises beyond the term. At most it gave the defendant a right, if he complied with the conditions upon which the right was based, to obtain a lease for two years more, but he did not in fact obtain such a lease."); *Warner Associates* v. *Logan*, supra, 50 Conn. App. 96 ("intent expressed in the plain language of the lease between the plaintiff and the defendants created an option to renew the lease for an additional five year period under the same terms and conditions as the

original lease, except that the amount of rent during the renewal period would be subject to a negotiated adjustment . . . the negotiated renewal lease was to be in writing, and if the defendants remained in the premises after the expiration of the term of the lease without having executed a new written lease, such hold-over would not constitute a renewal or extension of the lease"). The same legal principle was followed under different factual scenarios in *F.B. Fountain Co.* v. *Stein*, 97 Conn. 619, 118 A. 47 (1922), and *Karn* v. *DiLorenzo*, 95 Conn. 267, 111 A. 195 (1920).

The dissent takes issue with our reliance on *Platt* and *Warner Associates* and relies on six cases that are factually distinct from the one before us. The most important factual distinction in all of those cases is that the rent to be paid during the extended or renewed leasehold had been determined or a formula for computing it had been agreed on by the parties. The cases cited in the dissent support, rather than detract from, our conclusion that a writing was necessary to renew the leasehold for an additional five year term.[7]

The dissent relies on *Corthouts* v. *Connecticut Fire Safety Services Corp.*, 2 Conn. Cir. Ct. 34, 193 A.2d 909 (1963), for the proposition that the extension of a lease does not require a new writing if at least three limitations are included in the lease, the commencement, the continuance and the termination. Id., 38–39; but see *W.G. Maltby, Inc.* v. *Associated Realty Co.*, 114 Conn. 283, 288, 158 A. 548 (1932), in which our Supreme Court concluded that "[t]he contract is definite as to the premises to be let, the time when the term was to commence, the duration of the term, *the rent to be paid,* and was, as between the parties, a valid lease of the premises." (Emphasis added.)

---

[7] The majority takes no issue with the legal propositions cited by the dissent, only their application.

In *Corthouts*, the lease provided an option for an extension and the amount of rent to be paid if the lease were extended.[8] The lessee was not required to give notice of its intension to exercise its option to continue in possession of the premises. Under certain conditions, which were present in *Corthouts*, a lessee's mere holding over was sufficient to exercise its option. *Corthouts* v. *Connecticut Fire Safety Services Corp.*, supra, 2 Conn. Cir. Ct. 39. The court noted that the lease at issue provided the amount of rent to be paid and distinguished the case from *Welk* v. *Bidwell*, 136 Conn. 603, 73 A.2d 295 (1950), in which the dispute centered on the amount of rent to be paid. *Corthouts* v. *Connecticut Fire Safety Services Corp.*, supra, 40.

In *Welk*, the landlord and the tenant had agreed to a month-to-month lease of a tobacco barn for $10 per month. *Welk* v. *Bidwell*, supra, 136 Conn. 605. Prior to the expiration of a month's term, the landlord informed the tenant that he was increasing the rent to $125. Id. The tenant held over, refused to pay $125 per month and continued to pay $10 per month. Id. The landlord brought an action to collect the difference between $10 and $125 per month. Id., 604–605.

"The fact that the [tenant in *Welk*] held over in possession of the property after the expiration of his lease for the month . . . did not itself create a lease for the subsequent month. The parties were free to make a contract for the future occupancy of the property. If there had been no dispute between them as to the terms of the future occupancy, the holding over by the tenant and the acquiescence therein by the landlord would have raised such a contract by implication. . . .

---

[8] The *Corthouts* lease stated in relevant part: "The exercise of said option shall act as and be an extension of this lease on the same terms and conditions as those recited herein, except that the rental to be paid shall be increased . . . ." (Internal quotation marks omitted.) *Corthouts* v. *Connecticut Fire Safety Services Corp.*, supra, 2 Conn. Cir. Ct. 35.

Indeed, if the landlord had specified terms for the future occupancy of the property, the continuance in possession by the tenant without objection by him to those terms might have been construed as an acceptance of those terms and thus a contract would have been implied from the conduct of the parties. . . . But if there had actually been no meeting of the minds either because of ambiguity or uncertainty in negotiations or because the negotiations had not been completed, then, of course, there could have been no contract. . . . If a tenant remains in possession without the consent of the landlord, there is no contract for an extended term to be implied from the holding over. . . . A fortiori, where the parties are in definite dispute as to any of the essential terms of a new tenancy, certainly no lease can be implied from the fact that the tenant holds over." (Citations omitted.) Id., 607–608.

The *Welk* court noted that the landlord could not impose the increased rent on the tenant and that the tenant's refusal to pay left the parties without a contract. Id., 608. The tenant was not a trespasser, as he had entered into possession of the property under a lease that gave him the right to possession. Id. "The plaintiff could have revoked that right and recovered the right of possession by peaceable entry or by way of summary process." Id.;[9] see also *FJK Associates* v. *Karkoski*, 52 Conn. App. 66, 68, 725 A.2d 991 (1999). The case before us is similar: The parties do not have a contract or lease because there was no meeting of the minds as to the rent to be paid during the optional, second five year lease term.

The case of *Ackerman* v. *Loforese*, supra, 111 Conn. 700, demonstrates how the practical construction of

---

[9] "So in all cases [the landlord] may at any time, after the expiration of the lease, bring his [summary process] action, on giving . . . notice, provided he has done no act which will amount to an express, or implied assent, to the continuance of the lease." (Internal quotation marks omitted.) *City Coal Co.* v. *Marcus*, 95 Conn. 454, 464, 111 A. 857 (1920).

the parties' contract can be determined by their conduct prior to a dispute. In 1919, the Ackerman parties entered into the five year lease that contained an option for renewal and an option to purchase the premises for a specific sum. At the end of the first year under the lease, the parties executed a supplemental agreement continuing the lease in all respects, except that the amount of rent was increased. In 1924, at the end of the five year term, the tenant notified the landlord that he was exercising his option to continue to rent the premises under the same terms and conditions of the original lease. The tenant offered to sign a renewal lease, but no new lease was executed. After refusing to accept the tenant's rent for a few months in 1924, the landlord accepted all rent until the events that gave rise to the tenant's action for specific performance. In 1929, the tenant notified the landlord of his intent to exercise the option to purchase and tendered the agreed on price. The landlord refused to convey the premises to the tenant. "[The landlord's] acquiescence and conduct and that of his successors was consistent only with a construction that the word 'renewed' was used in the lease as synonymous with 'extended' or with an admission that the exercise by the [tenant] of his election to renew was such an affirmative act as to create the renewal." Id., 706. In the present case, the plaintiff did not acquiesce in the defendant's holding over, thereby creating a new lease by implication. See *Welk* v. *Bidwell*, supra, 136 Conn. 607.[10]

---

[10] We need not examine in detail the remainder of the cases cited by the dissent. They are distinguishable on their facts in that the amount of rent to be paid in the extended or renewed term was determined. Additional distinctions with respect to the holdings of the cases are noted here parenthetically. *Didriksen* v. *Havens*, 136 Conn. 41, 44–45, 68 A.2d 163 (1949) (exchange of letters constituted extension of lease, including option to purchase); *Blanck* v. *Kimland Realty Co.*, 122 Conn. 317, 319–20, 189 A. 176 (1937) (character of written agreement too informal to construe renewal provision as covenant to renew); *W.G. Maltby, Inc.* v. *Associated Realty Co.*, supra, 114 Conn. 288–90 (exchange of letters constituted offer and acceptance; conduct of parties presumptive intent of parties); *Seven Fifty*

Here, there is no question that the parties did not sign a new agreement, the rent for a second five year term had not been determined, and the plaintiff did nothing to acquiesce in the defendant's continuing in possession after April, 2000. The option in the lease constituted a renewal, not an extension of the lease. That conclusion is supported by the undisputed conduct of the parties in May, 1995.

We therefore conclude that the court properly granted the plaintiff's motion for summary judgment because, in accordance with § 47a-26d, the defendant had no right to possession of the premises after the five year leasehold expired.[11]

## II

The defendant also claims that the court improperly concluded that the equitable doctrines of laches, equitable forfeiture and promissory estoppel were not applicable special defenses in this case.[12] Although we acknowledge that equitable special defenses may be

---

*Main Street Associates Ltd. Partnership* v. *Spector*, 5 Conn. App. 170, 172, 497 A.2d 96 (affirmative act on part of tenant necessary to exercise right to renew), cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985).

[11] The dissent also invites a review of more recent decisional law. Those cases, too, are factually distinct and do not support the position taken by the dissent. In each case, the new rent was determined or there was an agreed formula for computing the same. See *Warner Associates* v. *Logan*, supra, 50 Conn. App. 96 (negotiated renewal lease to be in writing, tenant holding over would not constitute renewal or extension of lease); *David A. Altschuler Trust* v. *Blanchette*, supra, 33 Conn. App. 573 (reviewing court need not reach question whether lease created covenant to renew or covenant to extend; writing required to extend landlord-tenant relationship three years); *Tehrani* v. *Century Medical Center, P.C.*, 7 Conn. App. 301, 508 A.2d 814 (1986) (defects in notice to quit); *Zuckerman Group* v. *Raveis*, 4 Conn. App. 568, 495 A.2d 300 (lease renewed, defendant breached), cert. dismissed, 197 Conn. 811, 499 A.2d 62 (1985).

[12] We note, as the trial court did, that the defendant's special defenses contain no specific allegations of fact as required by Practice Book §§ 10-1 and 10-50. The plaintiff did not object to the form of the special defenses or file a motion to strike them.

alleged in a summary process action; see *Fellows* v. *Martin*, 217 Conn. 57, 61–63, 584 A.2d 458 (1991); *Kim* v. *Magnotta*, 49 Conn. App. 203, 227, 714 A.2d 38 (1998) (*Lavery, J.*, dissenting), rev'd on other grounds, 249 Conn. 94, 733 A.2d 809 (1999); we agree with the court that the special defenses alleged by the defendant are unavailing here.[13]

## A

The defendant claims that the court improperly determined that the doctrine of laches did not apply here, where the defendant claims that it was harmed by the plaintiff's delay in informing it that the lease would not be renewed.

"The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 333, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

On the basis of our review of the pleadings, we agree with the court's findings and analysis. In this summary process action, count one of the complaint seeks to evict the defendant on the basis of the termination of the lease by lapse of time. The defendant did not raise a genuine issue of fact that the plaintiff did not com-

---

[13] The defendant alleged a number of equitable special defenses, but briefed arguments only as to three of them in the trial court and in this court.

mence its action in a timely manner, but claimed that the plaintiff did not present timely its legal theory regarding the enforceability of the renewal option. The lease expired on April 30, 2000. The notice to quit was served on the defendant on May 4, 2000, and the action was commenced in June, 2000. The plaintiff could not have commenced the action prior to the expiration of the lease.

"[T]he defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit." (Internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 88, 527 A.2d 230 (1987); *Castonguay* v. *Plourde*, 46 Conn. App. 251, 265, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997). The court, therefore, properly concluded that the defendant could not prevail on its special defense of laches.

### B

The defendant claims that the doctrine of equitable estoppel should bar the plaintiff's claim. The defendant asserts that the plaintiff should have told the defendant that it did not believe the covenant to renew was enforceable when it acquired title to the premises. Although the court analyzed the defendant's claim, it also restated its conclusion that the enforceability of the renewal option relates to the defendant's right to a new lease, not to the defendant's right of possession. We agree that the defendant's equitable estoppel defense does not apply to the plaintiff's right of possession in this summary process action.

### C

The defendant's third equitable defense is based on the doctrine of equitable forfeiture. We agree with the court's clear analysis of this claim.

"Equitable principles barring forfeiture may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 778, 627 A.2d 386 (1993). In the present action, the defendant argues that the doctrine should excuse its alleged failure to exercise its right of renewal properly by sending notice via certified mail. The court already concluded in its memorandum of decision that under the holding in *Platt* v. *Cutler*, supra, 75 Conn. 186–87, "proper notice by the defendant of its intent to renew might create a contractual right to a new lease, but does not itself create a right to possession. Consequently, under the facts of the present case, the equitable doctrine against forfeitures does not implicate the defendant's right to possession, as equitable defenses to summary process must. Nor does the defense constitute a genuine issue of material fact because it cannot affect the outcome of the case."

The judgment is affirmed.[14]

In this opinion FLYNN, J., concurred.

BISHOP, J. dissenting. I believe that the trial court should not have granted summary judgment because the pleadings and affidavits submitted by the defendant

[14] Ironically, the plaintiff requested that we consider, as an alternate basis for affirming the judgment, the enforceability of the renewal option in the lease. Because we affirm the judgment on the basis of the issues presented by the defendant, we will not consider the plaintiff's alternate basis. The plaintiff requested that we consider the alternate basis as a matter of judicial economy so that the parties and the court could obviate the need for a trial in the parties' separate breach of contract action. As we and the trial court both have stated, the enforceability of the renewal clause is not relevant to the plaintiff's summary process action, which concerns only the right of possession.

in opposition to the motion for summary judgment fairly implicated the central question of whether the lease had terminated.

The trial court relied on the proposition, gleaned from Connecticut decisional law, that, where the language of the lease is clear and definite, the intention of the parties must be gathered from the instrument itself, and that, where contractual language is clear and unambiguous, intent is a question of law that may be decided by way of summary judgment. *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 666–68, 646 A.2d 143 (1994) (phrase "additional rent" plain, unambiguous); *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 373–74, 321 A.2d 444 (1973) (provision for increased rent if property foreclosed on found unambiguous). While I agree that these propositions apply in many cases involving contractual interpretation, I believe these truths are, here, inapplicable. Our courts have consistently held that even though a lease speaks in terms of a "right to renew," that language, itself, is not conclusive. Therefore, to the extent that the court found that the language of the lease alone was adequate to determine the intent of the parties as a matter of law, I believe it improperly grafted general contract law[1] into a particular context in which decisional law has carved out an exception.

I agree with the majority that the determinative issue is whether the option in the lease is one to extend or

---

[1] "[B]ecause the trial court relied solely upon the written [agreements] in ascertaining the intent of the parties, the legal inferences properly to be drawn from the [documents are questions] of law . . . . *Morton Buildings, Inc.* v. *Bannon*, [222 Conn. 49], 53–54, [607 A.2d 424 (1992)]. See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 62, 591 A.2d 1231 (1991) (legal effect of [undisputed] facts is question of law); *Bria* v. *St. Joseph's Hospital*, 153 Conn. 626, 632, 220 A.2d 29 (1966) (when surrounding circumstances are not in dispute, construction and legal effect of [contract] is question of law). . . . Accordingly, our standard of review is plenary." (Citation omitted; internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999).

to renew, and also agree that the resolution of that issue requires a determination of the parties' intent. I part company with my colleagues because I believe that intent is a genuine question of material fact that, when adequately raised, defeats summary judgment.

A review of our decisional law suggests that the specific contractual language "option to renew" is frequently not indicative of the nature of the option, and, in such cases where it is contended that the lease option is for an extension and not a renewal,[2] further inquiry is warranted to determine the intent of the parties. The distinction between an extension and a renewal of a lease is a technical one; *Johnson* v. *Mary Oliver Candy Shops, Inc.*, 116 Conn. 86, 89, 163 A. 606 (1933); and one that is ignored in a substantial number of jurisdictions,[3] yet persists, vestigially, in Connecticut. The most

---

[2] The defendant argues in its appellate brief that "an extension does not require a new document if, in the existing lease, at least three of the limitations for a valid lease are certain: the commencement, the continuance, and the end of the term. . . . Accordingly, no new document was required because the three limitations for a valid lease all were contained within the existing lease." (Internal quotation marks omitted.) Further, in its answer to the complaint, the defendant denies that the lease has terminated by lapse of time.

[3] R. Schoshinski, American Law of Landlord and Tenant (1980) § 9:1, pp. 595–97. "[I]n a substantial group of jurisdictions, courts quite sensibly refuse to draw any distinction between an option to renew and one to extend since such differentiation is not made by laymen entering into lease arrangements." Id., 597.

"It has been recognized that in many respects the words 'extension' and 'renewal' are of similar import and that they are frequently used as being synonymous; and it has been said that the tendency of courts seems to be to disregard any distinction between them. Some authorities have gone further and declared that there is no distinction or substantial difference between the terms. It has been asserted that the words 'renewal' and 'extension' as used in a lease are not always to be considered words of art, that they have no legal or technical significance, and that they may mean whatever the parties intended when contracting.

"Even in jurisdictions in which a distinction obtains, it has been judicially recognized that considerable difficulty sometimes arises in deciding whether in different leases a provision is one for a renewal or an extension. In the final analysis, whether a contractual provision involves a renewal or an

pertinent aspect of the distinction is that an extension is considered a continuation of the existing lease, not requiring a new lease, while a renewal, in the most technical sense, is a new demise, requiring a new lease.[4]

The trial court's decision and the majority's affirmance turn on the characterization of the lease language as an option to renew. If the option is for a renewal, then, as our case law generally holds, the exercise of the option results in no possessory right in the leasehold without a new written lease—though it may entitle the lessee to other legal rights. If the option is determined to be an extension, then the exercise of the option provides a possessory right, as the extended term is viewed as a continuance of the original lease. In other words, if the lease option is a covenant to extend the lease, and not to renew it, then the summary process action under General Statutes § 47a-26d is inapplicable because the defendants, if they have properly exercised the option to extend the lease,[5] can show

extension is determined by the intention of the parties as disclosed by the whole instrument and the parties' interpretation and practical construction thereof; and the use of the word 'renewal' or 'extension' is not conclusive." 51C C.J.S. 165–66, Landlord and Tenant § 54 (b) (1968).

[4] R. Schoshinski, American Law of Landlord and Tenant (1980) § 9:1, p. 596. "Some courts have drawn this sharp distinction between renewal and extension, requiring more than mere holding over and payment of rent to exercise an option to renew. Under the most narrow view, since renewal is a new tenancy, the execution of a new leasing agreement is required to give it effect." Id.

[5] I am mindful that the option, even if construed as an option to extend, leaves the monthly rental of the extended period open to negotiation. That concern, however, is not determinative of the issue because the inclusion of a fixed rate for the option period may not be an essential component of an option to extend. See Corthouts v. Connecticut Fire Safety Services Corp., 2 Conn. Cir. Ct. 34, 38–39, 193 A.2d 909 (1963) (extension does not require new document if, in existing lease, at least three of limitations for valid lease are certain: commencement, continuance, end of term); see also Santopietro v. Dugan's Restaurant Cafe, Superior Court, judicial district of Waterbury, Housing Session, Docket No. 015786 (March 20, 1996); Larsen v. Timothy's Ice Cream, Superior Court, judicial district of Fairfield, Housing Session, Docket No. 29502 (October 12, 1995).

The question of whether an option to extend or renew, where the rent

title.[6] Therefore, to defeat the plaintiff's motion for summary judgment in the present action, it should have been sufficient for the defendant to raise the factual question of whether the option operates as an extension or as a renewal. I believe the defendant met this burden by the pleadings and the materials it submitted in opposition to the motion.

A brief review of our decisional law supports the notion that the option language can be understood as providing for an extension, rather than a renewal, by reference to the conduct of the parties and a review of the entire lease. In short, the language of the clause itself, no matter how apparently clear, is, alone, often not determinative.

In *Ackerman* v. *Loforese*, 111 Conn. 700, 151 A. 159 (1930), a tenant attempted to renew pursuant to a renewal clause, but did not succeed in obtaining a new lease. When the landlord later claimed that the tenant had failed in his attempt to renew, the court turned to the distinction between a renewal and an extension. "A technical difference is frequently recognized . . .

---

to be paid is "to be negotiated," is unenforceable for vagueness is a question of first impression for appellate review in Connecticut. Other jurisdictions have split on the issue, some finding that the absence of a rental amount or a formula for determining it makes the option unenforceable; see 58 A.L.R.3d 500 (1974); but a growing number of jurisdictions have found that a "reasonable" amount of monthly rent is to be implied and could be determined by a court to be fair market rental. See *Fletcher* v. *Frisbee,* 119 N.H. 555, 560, 404 A.2d 1106 (1979); *Playmate Club, Inc.* v. *Country Clubs, Inc.,* 62 Tenn. App. 383, 462 S.W.2d 890 (1970). This latter view has been characterized as the "trend in modern decisions" by at least one commentator. R. Schoshinski, American Law of Landlord and Tenant (1980) § 9:6, p. 614.

[6] General Statutes § 47a-26d provides in relevant part: "If, on the trial of a summary process complaint it is found that the defendant is the lessee . . . and holds over after the termination of the lease . . . or, if there was no lease . . . and the defendant does not show title in himself . . . the court shall forthwith enter judgment that the complainant recover possession . . . ."

between the effect of a covenant for renewal and one for extension, especially as to the effect of retention of possession after the original term, it being held that a stipulation for renewal does not, like a covenant to extend, of itself and alone continue the tenancy for the renewal period, but calls for a new lease, a formal extension of the existing lease or something equivalent thereto . . . . [I]t is recognized that the technical difference may be controlled by the intention of the parties as manifested by the entire lease or by their practical construction of their contract, as by conduct before the controversy arose, whereby the privilege may be construed as one for an extension of term, though the language employed, in a strict technical sense, may signify renewal. The mere fact that the privilege is called one to renew is not conclusive." (Citations omitted.) Id., 704.

These two tenets—that the terminology of renewal does not necessarily mean that a renewal was intended and that the intention of the parties may govern the characterization—have been reiterated frequently in landlord-tenant cases since *Ackerman*. In *Blanck* v. *Kimland Realty Co.*, 122 Conn. 317, 189 A. 176 (1937), which quoted *W.G. Maltby, Inc.* v. *Associated Realty Co.*, 114 Conn. 283, 285 n.(a) & 288–89, 158 A. 548 (1932), our Supreme Court held that "an agreement . . . for a lease . . . with privilege of renewing lease for five years, [was] one for an extension and not a covenant of renewal . . . . There is *no express covenant* on the part of the lessor to enter into a new lease, and we think the agreement in this case is to be construed as one for an *extension* rather than a covenant of renewal in the strict sense. This is controlling authority for our conclusion that in the present case the agreement was for an extension of the lease and not a covenant of renewal." (Emphasis added; internal quotation marks omitted.) *Blanck* v. *Kimland Realty Co.*, supra, 320.

Twelve years later, in *Didriksen* v. *Havens*, 136 Conn. 41, 68 A.2d 163 (1949), our Supreme Court, in affirming the trial court, concluded that the phrase " 'the privilege of renewing this lease' "; id., 42; actually gave the lessee the privilege of extending the lease. Id., 45. In doing so, the court looked to letters exchanged by the lessor and lessee (which continued to use the word "renew"), the parties' actions, as well as the lessee's improvements to the property. Id., 44–45. "If there is any doubt that extensions rather than renewals were intended, it is removed by the practical construction of the parties in continuing the lease merely upon the strength of the letters passing between them." Id., 45.

More recently, in *Seven Fifty Main Street Associates Ltd. Partnership* v. *Spector*, 5 Conn. App. 170, 171, 497 A.2d 96, cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985), the court commented that "[a]lthough . . . the lease speaks in terms of a 'right to renew,' such language, in and of itself, is not conclusive [of the parties' intent]." The holdover lessee, who had not acted in any affirmative way to renew the lease, claimed that the option was really one to extend, which would be exercised by holding over. The court reviewed the holdover clause to ascertain the intent of the parties in the event that the lessees remained on the premises after the expiration of the lease.[7] Upon finding that the holdover

---

[7] The holdover clause in *Seven Fifty Main Street Associates Ltd. Partnership* provided that if the lessee remained after the term of the lease without "having executed a *new written lease* . . . such holding over shall not constitute a *renewal or extension* of this lease." (Emphasis added; internal quotation marks omitted.) *Seven Fifty Main Street Associates Ltd. Partnership* v. *Spector*, supra, 5 Conn. App. 172. In contrast, in this case, the clause makes no mention of the effect holding over would have as to the exercise of an extension, nor does it mention a new written lease.

At common law, an extension can be exercised by mere holding over. Whether an extension can be exercised in such a way is only peripheral to this case, however, because, the lease provides another specific means of exercising the option, that is, by giving timely notice, which the lessee, arguably, gave. It is argued that the giving of proper notice combined with the terms of the option specified in the lease was sufficient to exercise the

clause foreclosed the possibility that remaining after the lease's first term would operate to either extend or renew (the factual distinction, at this point, became immaterial), this court found that the trial court did not improperly find that the option was one to renew.[8]

As this cursory review of our decisional law shows, the language of the lease does not control when determining whether an option is one to renew or to extend, but the intent of the parties controls, as evidenced by any number of collateral factors, including the actions or expressed beliefs of the parties, the nature of the business at the leasehold, the parties' statements and deeds, and past practice: In other words, *"the intention of the parties as manifested by the entire lease or by their practical construction of their contract, as by conduct before the controversy arose . . . ."* (Emphasis added.) *Ackerman* v. *Loforese*, supra, 111 Conn. 704. This determination requires an examination of the intent of the parties, and, since intent is a question of fact; *Peter-Michael, Inc.* v. *Sea Shell Associates*, 244 Conn. 269, 275, 709 A.2d 558 (1998); requiring fact based analysis, summary judgment should not have been granted.

In finding that there was no genuine issue of material fact as to title, the trial court looked to the construction of the renewal clause, and, to a lesser extent, the holdover clause to determine whether the parties intended that a new written lease would be required for the defendant to remain in possession. The majority goes

option to extend the lease. In essence, the lessee claims that it is not holding over. See footnote 6.

[8] For a sample of recent jurisprudence on this subject, see also *Warner Associates* v. *Logan*, 50 Conn. App. 90, 718 A.2d 48 (1998); *David A. Altschuler Trust* v. *Blanchette*, 33 Conn. App. 570, 636 A.2d 1381, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994); *Tehrani* v. *Century Medical Center, P.C.*, 7 Conn. App. 301, 508 A.2d 814 (1986); *Zuckerman Group* v. *Raveis*, 4 Conn. App. 568, 495 A.2d 300, cert. dismissed, 197 Conn. 811, 499 A.2d 62 (1985).

further and additionally examines the lease amendment to support the trial court's finding that the parties intended to renew. In either case, I believe, respectfully, the court is engaging in fact-finding, an improper foray when testing a motion for summary judgment or a trial court's response to it. For me, the inquiry stops at the determination that a question of material fact, in this case the intent of the parties, has been raised.

In examining the entire lease, and the practical construction of it by the parties prior to this controversy, as our case law requires, I think it is material that the first renewal, for five years after the initial ten year term, was exercised *without a new lease*, but merely with an amendment to the original lease. The amendment, dated two days after the expiration of the first term, memorializes the parties' agreement to the renewal, specifies terms for the new rental period[9] and refers back to the original lease for all other terms.[10] The sole condition precedent mentioned in conjunction with the option to renew, both in the original document and the amendment, was for timely notice. Under these circumstances, it is not unreasonable to conclude that a fact finder could determine that the parties contemplated a lease extension, notwithstanding the language of the option clause.

Additionally, the option here contains no express requirement for a new lease, nor did the parties create a new lease when the option for the first term was

---

[9] The option to renew states that all the same terms and conditions apply to the renewal period, "except that annual rental for said additional terms is to be negotiated by the parties . . . ." The enforceability of this option is contested by the plaintiff because it leaves open to question the amount of rent to be paid in the future. The trial court did not find it necessary to reach this question. See footnote 5.

[10] The amendment states in relevant part: "4. Except as expressly modified and amended pursuant to the terms of this Amendment, all other covenants and agreements provided for in the Lease shall remain in full force and effect and continue to govern the parties."

exercised. These facts alone, if construed in favor of the nonmoving party, raise a question of material fact as to the intent of the parties that is sufficient to defeat summary judgment. Also, the affidavit from the defendant's president attests the following: "[A]ll the parties to the transaction knew that I would only purchase the restaurant if I could have a twenty year lease. . . . [I]t was always my intent and the intent of the parties to permit [the defendant] to have a twenty year lease. . . . [I]t was absolutely imperative to have a twenty year lease in order to make the financial commitment necessary to run this business." Further, the defendant in that affidavit purports to "have expended large sums of money, in addition to my lease payments, to effectuate any and all repairs and 'cosmetic renovations' that were or may have been required under the lease."

To the extent that the court made factual findings that led it to the conclusion that the lease was clear and unambiguous, the court exceeded its bounds. It is axiomatic that in considering a motion for summary judgment, the function of the court is to determine whether any genuine issue of material fact is in dispute, not to make factual findings. *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 522, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001); *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 35 Conn. App. 94, 102, 644 A.2d 933 (1994). The court found that "it is undisputed that . . . the old lease expired and a new lease was never implemented." While the defendant was, concededly, unclear in its assertion that the option was one to extend and not simply one to renew ("the technical distinction"), it has consistently denied that the lease had expired by lapse of time, and has asserted that the intent behind the two lease options was to have the equivalent of a twenty year lease. Implicit in these assertions is the belief that the option was, what has been historically called, an extension.

Since, in Connecticut, we maintain a distinction between covenants to renew and covenants to extend, and hold that the language of such covenants is equivocal in itself, I believe we are obliged to look beyond the immediate language of the option, to factually determine the intent of the parties.

Accordingly, for the reasons stated, I respectfully dissent.