******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LYNWOOD PLACE, LLC *v.* SANDY HOOK HYDRO, LLC
(AC 35483)

Sheldon, Keller and Harper, Js.

*Argued March 5—officially released June 3, 2014*

(Appeal from Superior Court, judicial district of
Danbury, Pavia, J.)

*Douglas J. Lewis*, for the appellant (defendant).

*Linda Pesce Laske*, with whom, on the brief, was *Joel
Z. Green*, for the appellee (plaintiff).

*Opinion*

KELLER, J. In this summary process action, the defendant, Sandy Hook Hydro, LLC, appeals from a judgment of immediate possession rendered by the trial court in favor of the plaintiff, Lynwood Place, LLC, regarding demised commercial premises located at 75 Glen Road, Newtown. The defendant claims that the court improperly (1) found that the defendant had not paid certain additional rent that was due and owing under the terms of the parties' lease (lease) and (2) failed to find that the plaintiff was barred by the doctrine of laches from denying that the defendant had paid the additional rent. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, found by the court, and procedural history are relevant to our review of the defendant's claims. The plaintiff is the owner of the 75 Glen Road property, and the defendant is a business that operates a hydroelectric generating station located on the property. The parties entered into a thirty year lease on July 2, 2004, for the use and occupancy of a portion of the property, which consists of a hydroelectric turbine pit area located on the first floor of an office building on the property, and an open canal located elsewhere on the property. The lease also provided the defendant with the right to pump water in and out of the turbine pit area through an existing pipe. Pursuant to the terms of the lease, the defendant agreed, inter alia, to pay a base annual rent of $1500 and, starting in the second year of the lease, to pay additional rent that was to be calculated as a proportionate share of any increase in yearly operating expenses.[1] The lease provided: "As used herein, the term 'proportionate share' shall mean six (6%) percent." At the time the lease was negotiated and executed, both parties were represented by counsel.

The defendant paid its base annual rent in full in accordance with the terms of the lease; however, a dispute arose in 2005 over the plaintiff's calculation of additional rent pursuant to the operating expenses clause of the lease. The defendant refused to pay the additional rent as billed by the plaintiff. After multiple discussions and negotiations with the defendant regarding its continued failure to pay in full the additional rent due and owing under the lease, and providing the defendant with opportunities to cure its breach, on November 29, 2011, the plaintiff served the defendant with a notice to quit possession and to vacate the premises by December 16, 2011. The defendant did not comply with the notice to quit possession, and, consequently, the plaintiff commenced this summary process action. The summary process complaint alleged that the defendant had breached the lease by failing to pay additional rent due to the plaintiff thereunder for the years 2007 through 2010, and that the plaintiff had

served a notice to quit possession terminating the lease, but the defendant had remained in possession without any right or authority. The plaintiff sought immediate possession of the premises and the forfeiture of the defendant's possessions and personal effects in accordance with General Statutes § 47a-42a.

The defendant filed an answer and special defenses on February 28, 2012. The defendant denied that it had breached its lease with the plaintiff and raised several special defenses, including the equitable defense of laches. In support of that defense, the defendant alleged that it had begun disputing the plaintiff's calculation of additional rent in September, 2005, and that the plaintiff had "accepted the defendant's tendered base rent, and the tendered 'additional rent' in 2005, and for the years up and through the time the plaintiff caused the notice to quit to be served." The defendant further alleged that it had spent significant sums in maintenance and improvements to the premises in reliance upon the plaintiff's acceptance of those tendered payments. According to the defendant, the plaintiff should be estopped from trying to enforce the lease and to collect additional rents some seven years later. In its reply to the special defenses, the plaintiff acknowledged the receipt of partial payments toward the additional rent due, but denied the allegation that it should be estopped from enforcing the lease by collecting the balance due above and beyond the amount of additional rent already tendered.[2]

The matter was tried to the court, *Pavia, J.*, on December 17, 2012. On March 8, 2013, the court issued a memorandum of decision in which it found, on the basis of the evidence adduced at trial and its assessment of the testimony and credibility of the witnesses, that the plaintiff had proven, by a fair preponderance of the evidence, all of the elements necessary to secure a judgment of possession in its favor. With regard to its rejection of the defendant's special defense of laches, the court stated: "The court credits the testimony of [Jack] Braverman, [the plaintiff's] manager, that he had made multiple attempts to collect the additional rent pursuant to the terms of the lease. Detailed itemized bills were provided to the defendant, who rebuffed the submitted costs. The defendant and the plaintiff discussed and negotiated the utility costs on multiple occasions during the period of time in which the defendant asserts undue delay. The court finds that this was an ongoing issue which both sides attempted to resolve for many years. As such, the defendant has failed to prove an inexcusable delay with resulting prejudice, both of which are necessary for a valid defense of laches." The court rendered a judgment of immediate possession in favor of the plaintiff. This appeal followed.

I

The defendant first claims that the court erroneously found that the defendant had failed to pay additional rent due to the plaintiff in accordance with the terms of the parties' lease. The defendant argues that there was an ambiguity in the lease as to what operating costs properly should have been included in calculating additional rent for any given year. Further, it argues that it made partial payments of additional rent on the basis of its own calculations and that those payments were accepted by the plaintiff. The defendant also maintains that the court never calculated with certainty how much additional rent was due at any particular time and that the plaintiff failed to produce any expert testimony or other evidence proving that the plaintiff's calculation of additional rent was correct or that the defendant's calculations were incorrect. In light of the admission of the defendant's representative at trial that the defendant never paid 6 percent of the increase in operating expenses, irrespective of how operating expenses were calculated, the defendant's arguments are unavailing with respect to the claim raised on appeal.

Whether a summary process defendant has paid rent in accordance with the terms of a lease presents a question of fact for the trier. See *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 626, 987 A.2d 1009 (2010). "Factual findings are subject to a clearly erroneous standard of review. . . . It is well established that [a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Ursini* v. *Barnett*, 124 Conn. App. 855, 858, 10 A.3d 1055 (2010), cert. denied, 299 Conn. 924, 11 A.3d 152 (2011).

"A lease is a contract . . . ." *Robinson* v. *Weitz*, 171 Conn. 545, 551, 370 A.2d 1066 (1976). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and

reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros, Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). When a contract is commercial in nature and is "made by sophisticated commercial parties with the advice of counsel during an extensive drafting process," there exists a "presumption of definitiveness." Id., 496–97.

The defendant concedes in its brief to this court that "the terms of the lease in question were committed to writing, as between sophisticated parties, each represented by counsel . . . ." Accordingly, the trial court was entitled to impart a presumption of definitiveness as to the language of the lease. See *Tallmadge Bros, Inc.* v. *Iroquois Gas Transmission System, L.P.*, supra, 252 Conn. 496–97. Article III, § 4, of the lease governed the payment of "additional rent," and provided that, beginning one year after the lease commenced, the defendant, as the tenant, would pay, in addition to the base annual rent, "the [t]enant's proportionate share of the increase in the [o]perating expenses incurred by the [plaintiff] during the calendar year commencing January 1, 2003 and ending December 31, 2003 . . . ." The lease further provided that "[a]s used herein, the term 'proportionate share' shall mean six (6%) percent." Read together, it is clear and unambiguous that, beginning in year two of the lease, the defendant agreed to pay additional rent equal to 6 percent of any increase in operating expenses incurred by the plaintiff as set forth in the lease.

Richard Fattibene, the defendant's owner and operator, testified at trial on behalf of the defendant that the defendant had disputed many of the items that the plaintiff included in its calculation of the relevant operating expenses. In addition, he testified that the defendant also believed that it should only be required to pay 1.77 percent of any applicable operating expenses because 1.77 percent equated to the percent-

age of space that the defendant occupied in the office building.[3] During cross-examination, the plaintiff's counsel asked: "When you negotiated this lease you absolutely knew that your [pro]portional share of the additional rent was 6 percent. Correct?" Fattibene answered: "Yes, it was written in the lease." The plaintiff's counsel then asked: "And you've never paid 6 percent of the operating expenses for the building, have you?" To which Fattibene responded: "No." Fattibene later agreed with the plaintiff's counsel that even with respect to those operating expense items for which the defendant agreed it was responsible for paying a proportionate share, and for which the defendant had tendered its partial payment to the plaintiff, the defendant had never attempted to tender 6 percent. Thus, there was ample evidence in the record to support the court's factual finding that the defendant did not contest its nonpayment of the additional rent, because, by its own admission, the defendant had never paid additional rent in accordance with the clear and unambiguous terms of the lease.

## II

The defendant additionally claims that the court improperly failed to find that the plaintiff was estopped pursuant to the doctrine of laches from claiming that the defendant had failed to pay additional rent. We disagree.

Laches is an equitable defense; *Florian* v. *Lenge*, 91 Conn. App. 268, 281–82, 880 A.2d 985 (2005); and equitable special defenses may be raised in summary process actions. General Statutes § 47a-33a; *Tinaco Plaza, LLC* v. *Freebob's, Inc.*, 74 Conn. App. 760, 775–76, 814 A.2d 403, cert. granted on other grounds, 263 Conn. 904, 819 A.2d 840 (2003) (motion to dismiss granted February 4, 2004). "[T]he burden is on the party alleging laches to establish that defense." (Internal quotation marks omitted.) *Carpender* v. *Sigel*, 142 Conn. App. 379, 387, 67 A.3d 1011 (2013). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendants. . . . A mere lapse of time does not constitute laches unless it results in prejudice to the defendants. Such prejudice results if the defendants are led to change their position with respect to the matter in question. . . . Whether a plaintiff is guilty of laches is a question of fact for the trier and not one to be answered by this court unless the subordinate facts found make such conclusion inevitable as a matter of law." (Citations omitted.) *Haggerty* v. *Parniewski*, 11 Conn. App. 37, 40–41, 525 A.2d 984 (1987). As previously set forth in this opinion, we review a court's factual finding only to determine if that finding is clearly erroneous, meaning it is wholly unsupported by evidence in the record. See *Ursini* v. *Barnett*, supra, 124 Conn. App. 858. Here, there was ample evidence to support the court's determination that the plaintiff's delay in

initiating this summary process action was excusable.

The defendant argued at trial that six years had passed between the date that the parties first exchanged letters about their dispute over the calculation of the additional rent due and the date that the plaintiff served its notice to quit possession. The court, however, determined that the period of delay by the plaintiff in initiating the present summary process action was excusable because, during that time, the parties had been engaged in continuous discussions and negotiations to resolve their differences concerning the additional rent payments. The court's finding that the delay was excusable is supported by the testimony of Braverman, the plaintiff's principal owner and general manager, whose testimony the court specifically credited. Braverman testified on cross-examination in response to counsel's question about the delay in serving a notice to quit on the defendant that the parties "were constantly having discussions . . . [a]nd we constantly had meetings to try and get [the defendant] . . . to come to some agreement on this." He later explained that he usually had been able to work out disputes with tenants and that this was the first tenant against whom he had to bring a legal action. Fattibene also testified that the parties had engaged in "numerous, numerous discussions" over the issue of proper allocation of operating expenses. Evidence that parties had engaged in continual negotiations or discussions to resolve a legal dispute prior to one of the parties initiating a legal action ordinarily would preclude a finding that there was unreasonable delay in bringing the action. See, e.g, *Dochelli* v. *Dochelli*, 125 Conn. 468, 471, 6 A.2d 324 (1939) (laches not applicable in divorce action where parties in continual negotiation over support and education of children from time of separation); 30A C.J.S. 463, Equity § 156 (2007) ("[e]fforts to obtain a settlement or satisfaction without litigation will generally excuse a delay in bringing suit"). The court's finding that the defendant had failed to prove an inexcusable delay in the present case is fully supported by evidence in the record and, thus, was not clearly erroneous. The court properly rejected the defendant's laches defense on the basis of that finding.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Operating expenses are defined in the lease as including "all costs of maintaining and repairing (which includes replacement) and all other costs related to the [p]remises and any [p]remises common area as allowed under the generally accepted accounting principles accepted by the Internal Revenue Service for similar commercial buildings and real estate."

[2] We note that the defendant never asserted the defense of accord and satisfaction, which must be specially pleaded. See Practice Book § 10-50; *Fogil* v. *Boody*, 76 Conn. 194, 196, 56 A. 526 (1903). To the extent that the defendant's arguments on appeal could be construed as raising this defense, it is not properly considered by us in resolving this appeal because the defense never properly was raised and litigated before the trial court. See *Sloan* v. *Kubitsky*, 48 Conn. App. 835, 842, 712 A.2d 966 (1998), appeal dismissed, 248 Conn. 670, 728 A.2d 1095 (1999).

[3] Braverman, the plaintiff's manager, testified that the 6 percent provision in the lease was not based on square footage. Instead, it was based on the anticipated disproportionate impact that the plaintiff expected would result from the defendant's use of the demised premises for its hydroelectric generating facility.