WARNER ASSOCIATES *v.* MARILYN LOGAN ET AL.
(AC 17215)

Lavery, Schaller and Spear, Js.

Argued May 5—officially released August 25, 1998

*David J. Ordway*, for the appellant (plaintiff).

*Lawrence P. Weisman*, with whom, on the brief, was *Debra B. Marino*, for the appellees (defendants).

*Opinion*

LAVERY, J. The plaintiff, Warner Associates, appeals from the judgment in favor of the defendants Mariylyn Logan and John Logan after trial before the court. The dispositive issue in this appeal is whether the trial court properly found that the parties did not enter into an additional five year lease term.[1] We affirm the judgment of the trial court.

The trial court found the following facts. The defendants entered into a written commercial lease with the predecessor in title to the plaintiff covering a detached garage on the premises at 34 Franklin Street in Westport. The defendants used the garage to operate a commercial kitchen and catering business.

The term of the five year lease ran from May 1, 1988, through April 30, 1993. Paragraph twenty of the lease states: "In the event that the Tenant shall remain in the demised premises after the expiration of the term of this lease without having executed a new written lease with the Landlord, such holding over shall not constitute a renewal or extension of this lease. The Landlord may, at its option, elect to treat the Tenant as one who has not removed at the end of his term, and thereupon be entitled to all the remedies against the Tenant provided by law in that situation, or the Landlord may elect, at its option, to construe such holding over as a tenancy from month to month, subject to all the terms

---

[1] The plaintiff also raised the following two issues on appeal: (1) "Whether, in light of the resolution of the previous issue, the trial court should have ruled in favor of [the plaintiff] as to the remaining counts of its amended complaint, since the remaining counts all flowed logically from a binding and valid five year additional term to the parties lease," and (2) whether the trial court improperly applied the reasoning of *Boulevard Associates* v. *Sovereign Hotels, Inc.*, 72 F.3d 1029 (2d Cir. 1995). Because we affirm the judgment of the trial court, there is no need to address these issues.

and conditions of this lease, except as to duration thereof, and in that event the Tenant shall pay monthly rent in advance at the rate provided herein as effective during the last month of the demised term."

Paragraph twenty-nine of the lease states: "The Landlord hereby grants to the Tenant the right to renew this lease for an additional five year period beginning May 1, 1993 and ending April 30, 1998, under the same terms and conditions set forth herein except that there will be a negotiated adjustment in the rent to be in effect during the additional five year option period. The rent adjustment shall not exceed 10 percent of the rent in effect during the last year of this lease."

In September, 1992, the property was purchased by the plaintiff, which assumed the existing written lease with the defendants. Harry Monies was a general partner of the plaintiff. Monies attempted to increase the rent and to require a security deposit, neither of which was provided for in the lease or agreed to by the defendants.

Around March 20, 1993, the defendants, by certified mail, attempted to exercise the option to extend the lease. The defendants voluntarily paid the increased rent as provided in paragraph twenty-nine of the lease. On March 26, 1993, the plaintiff insisted on the security deposit, refused to accept the extension and forwarded to the defendants a proposed five year lease, the terms of which they did not accept.

In May, 1994, there was an interruption in the electrical service to the garage, which the defendants claimed arose from the installation of a fence by the plaintiff in 1992. The defendants hired an electrician to provide a temporary hookup for electrical service. On May 6, 1994, the defendants sent a letter by certified mail to the plaintiff referring to the electrical problem and the need for repair. On May 9, 1994, the plaintiff sent to

the defendants a notice of eviction stating that they were to vacate within thirty days because they failed (1) to sign the proposed lease, thereby making them month-to-month tenants, (2) to comply with the request for two months security, (3) to clean up the mess surrounding the building, (4) to remove a sign, and (5) to remove plants and tables from in front of the garage and to reduce the number of garbage cans from six to two. On May 10, 1994, the defendants responded by letter, denying any wrongdoing. On May 20, 1994, the plaintiff responded to the May 10 letter indicating that the notice of eviction was withdrawn, and declaring that the defendants were not month-to-month tenants.

On August 18, 1994, representatives of the Westport building department instructed the power company that the temporary electrical hookup was improperly attached. The defendants agreed to remove it. On August 31, 1994, a representative of the plaintiff sent a letter to the defendants, asserting that the defendants had an obligation to pay rent through April, 1998. The defendants vacated the premises in September, 1994.

At trial, two actions between the parties were consolidated. The trial court ruled in favor of the defendants in the plaintiff's action for breach of a lease contract, conversion, fraudulent misrepresentation and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The court ruled in favor of Warner Associates, which was the defendant in the second action.[2] The plaintiff appeals challenging only the judgment against it in the first action.

The plaintiff claims that the trial court improperly concluded that the parties had not entered into a valid

[2] In the second action, the Logans claimed that Warner Associates had intentionally interfered with their peaceful possession of the leased property in a number of ways. In addition, the Logans claimed that the interference led to a constructive eviction. The court ruled against the Logans, and no appeal was filed.

five year extension of the lease. Specifically, the plaintiff argues that under the terms of the lease, a new written agreement was not required for the defendants to exercise their right to renew the lease for an additional five year term. Further, the plaintiff argues that because all of the terms of the lease were identified except the amount of rent, which was acceded to by the defendants, there was a lease by implication.

The trial court interpreted paragraphs twenty and twenty-nine as follows: "Paragraph twenty provides that if the tenant remains after the expiration of the term of this lease without having executed a new written lease, such holdover shall not constitute a renewal or extension of the lease."

The trial court determined that the defendants attempted to renew the lease for the additional five year term, but that their efforts were unsuccessful. After the defendants expressed their desire to renew the lease, the plaintiff sent the defendants a new proposed lease that required two months security deposit. The original lease did not require a security deposit. In addition, the plaintiff sent the defendants a notice of eviction. The trial court stated that "[t]he result of the landlord's action in sending the notice of eviction was the rejection of the tenants' effort to renew the lease. Once rejected, the tenants made no additional effort to renew the lease after the landlord withdrew the notice of eviction. Since the tenants did not exercise a renewal option they were, in fact, month-to-month tenants." In addition, the trial court concluded that "there is no meeting of the minds, that there was no renewal of the lease, that the tenants were month-to-month tenants. That when the tenants vacated in September, 1994, they were no longer liable to pay rent for any months thereafter."

"A lease is a contract. In its construction, three elementary principles must be kept constantly in mind:

(1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 20, 485 A.2d 1285 (1985). "In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties. *Lampson Lumber Co.* v. *Caporale*, 140 Conn. 679, 682, 102 A.2d 875 (1954). The construction and legal effect of the expressed terms will not be varied by reason of inconvenience to the parties or unreasonableness of the terms. Id." *Hatcho Corp.* v. *Della Pietra*, supra, 21.

"We are reluctant to conclude that a contractual provision constitutes a meaningless gesture by the parties. . . . The rules of construction dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Citation omitted; internal quotation marks omitted.) *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 534, 630 A.2d 115 (1993).

"Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court. . . . When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the

terms of a writing are plain and unambiguous, and it is to be given effect according to its language." (Citations omitted; internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 232, 654 A.2d 342 (1995).

Upon our review of the lease, we conclude that the language is clear and unambiguous. In following the rules of construction by construing the lease as a whole and giving effect to all of its provisions, we conclude that paragraphs twenty and twenty-nine can be reconciled.

The intent expressed in the plain language of the lease between the plaintiff and the defendants created an option to renew the lease for an additional five year period under the same terms and conditions as the original lease, except that the amount of rent during the renewal period would be subject to a negotiated adjustment not to exceed 10 percent of the rent in effect during the last year of the lease. Further, the negotiated renewal lease was to be in writing, and if the defendants remained in the premises after the expiration of the term of the lease without having executed a new written lease, such holdover would not constitute a renewal or extension of the lease, but in fact create a month-to-month tenancy. Thus, to renew the lease effectively, the parties were required to negotiate the rental amount and create a new written document. In this case, that never happened. Although the defendants paid an increased amount of rent equal to the maximum amount permitted by the lease, the plaintiff refused to accept the extension, attempted to add additional terms and sent the defendants a different lease to which they did not agree.

We conclude that the parties failed to renew the lease for an additional five year term in a proper manner. When a lease term has expired and, thereafter, the lessee remains in possession and pays increased rent in

accordance with a renewal option, such payment does not demonstrate that the lessee has exercised its option to renew the lease. *David A. Altschuler Trust* v. *Blanchette*, 33 Conn. App. 570, 573, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The actions of the parties demonstrate that they failed to execute a new written lease as required by the clear and unambiguous language of the lease and that no meeting of the minds occurred evidencing an agreement to renew the lease.

The judgment is affirmed.

In this opinion the other judges concurred.