******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## DAVID SQUILLANTE ET AL. *v.* CAPITAL REGION DEVELOPMENT AUTHORITY*

Superior Court, Judicial District of Hartford

File No. CV-16-6070594-S

Memorandum filed July 18, 2018

*Proceedings*

Memorandum of decision on defendant's motion for summary judgment. *Motion granted.*

*Matthew S. Carlone*, for the plaintiffs.

*Benjamin C. Jensen*, for the defendant.

*Opinion*

NOBLE, J.

The question presented by the motion for summary judgment of the defendant, the Capital Region Development Authority (CRDA), is whether, in the absence of disputed material facts, CRDA is entitled to judgment as a matter of law on the breach of contract, promissory estoppel, and negligent misrepresentation claims asserted by the plaintiffs, David Squillante (Squillante) and DJS45, LLC (DJS45). The court finds that no enforceable agreement was created between the parties and holds that judgment should enter on all three claims in favor of CRDA.

### FACTS

The following facts and procedural history are relevant to this decision. This action was commenced by service of process on CRDA on July 26, 2016. The operative complaint is the amended complaint dated November 14, 2017 (complaint), which asserts in three counts, respectively, claims of breach of contract, promissory estoppel, and negligent misrepresentation. Squillante is the sole member of DJS45, a limited liability company. CRDA is a quasi-municipal corporation created by statute,[1] whose purpose is to "stimulate new investment within the capital region" and "encourage residential housing development." General Statutes § 32-602 (a) (1) and (3). Squillante formed DJS45, which thereafter purchased a five-story commercial building located at 283-291 Asylum Street in Hartford (property). Squillante opened a restaurant in the ground floor of the property and sought financing for the renovation and conversion of the upper four floors into residential apartments. Beginning in early 2013, Squillante engaged in conversations with representatives of CRDA about potential financing that resulted in the execution of a letter dated May 10, 2013 (letter). CRDA ultimately withdrew the offer to provide financing. The plaintiffs assert that the letter constitutes a binding contract, evinces a promise to provide financing upon which the plaintiffs reasonably relied, and contains misrepresentations upon which the plaintiffs relied to their detriment.

In particular, the letter provides that CRDA was "pleased to provide you with the terms and conditions under which CRDA will extend financial assistance for the conversion of 283-91 Asylum Street (the 'Project') into a mixed use residential project. The terms set forth below are intended to be *a preliminary outline of general business terms of the potential project and are expressly subject to the completion of CRDA due diligence investigation* including the provisions of necessary documents as outlined below and the securing of complete financing for the Project. *This letter is not intended to create any legal liability for CRDA* and is to serve as an explanation of assistance to be provided

by CRDA." (Emphasis added.) The letter was signed by Squillante, on behalf of DJS45, and Michael Freimuth, executive director of the CRDA, on its behalf. The letter proposed a construction loan for an unspecified amount not more than $575,000 and then a permanent loan of an also unspecified amount, but no more than $518,000 for a twenty year term at 1.5 percent.

Several terms and various contingencies remained unresolved. Because CRDA was only funding a portion of the project, the amount that it would actually lend depended upon (a) the amount of funding DJS45 was able to secure from private lenders, and (b) the amount of state historic tax credits to be awarded.[2] The letter specified that DJS45 "must present a final development budget and project application that will be incorporated into a formal Assistance Agreement between CRDA and Sponsor. Sponsor shall be responsible for the payment of all necessary and appropriate costs associated with this transaction, whether or not a closing takes place . . . ." The formal assistance agreement was never executed. Other terms were not identified by the letter, including dates for completion of any obligations. The letter provided that DJS45 "shall be responsible for any costs above the budget outlined in this letter to complete the Project in accordance with the plans and specifications finally approved by CRDA. [DJS45] will provide a guaranty or payment and performance bonds to the benefit of CRDA by a credit worthy entity approved by CRDA for the completion of the Project in a lien free state." While CRDA's board of directors had approved the terms and conditions of the letter, "such approval [was] contingent on the approval of the State of Connecticut Bond Commission. In the event that such approval is [not] obtained or any time CRDA determines in its discretion that such approval is not likely to be obtained with a reasonable period of time, CRDA may terminate this proposal." Finally, the letter informed DJS45 that, "[a]lthough not an exhaustive list, CRDA may request and [DJS45] shall provide the following: appraisals, title searches, covenants, insurance certificates, plans and specifications, evidence of financing, permits and approvals, contractor agreements, surveys, environmental clearance, final budget and final application."

On June 21, 2013, the state of Connecticut bond commission (commission) voted to approve the allocation of up to $575,000 for the CRDA's proposed loan to DJS45. On September 17, 2013, CRDA sent DJS45 a template of the formal assistance agreement identified in the letter. Section 3.9 of the assistance agreement, titled "Payment and Performance Bond," provided that "[DJS45] shall provide CRDA with Payment and Performance Bonds with respect to each Contractor that enters into a Major Contract with [DJS45] . . . ." On December 4, 1993, CRDA sent DJS45 a "closing checklist" identifying various items that needed to be pro-

vided. Item 33 included bonds from the general contractor and the subcontractors.

Although the plaintiffs now assert that the requirement of performance and payment bonds, rather than simply a personal guarantee, was a material breach of the contract embodied in the letter, this claim is negated by communications between Freimuth and Squillante. On January 7, 2014, Freimuth wrote to Squillante in an e-mail that there were "a variety of issues outstanding. I have attached the closing check list for the project that was sent to your attorney in early December and little has been done to advance the items on the list. I hear that your contractor cannot get bonded which is a non-starter . . . ." The e-mail inquired about the timing-out of an initial lender agreement and the lack of a fully executed commitment from the permanent lender. Freimuth indicated that they needed to consummate the deal because the "funds are now very 'old' and pressure is on to return them for other deals. If we do not bring this to conclusion in the next [forty-five to sixty] days, I will have little choice but to reallocate the funds."

Squillante replied to CRDA on January 7, 2014, representing that "[t]here are no issues with any of your concerns . . . . Also my contractor can get bonding, he was just looking not to incur the expense." DJS45 never obtained the performance or payment bonds. On July 25, 2014, the commission voted to reallocate the proposed funding for the project and CRDA revoked its approval of the application without prejudice. This action followed.

On October 23, 2017, CRDA filed its motion for summary judgment asserting that the letter was not a legally enforceable contract. Rather, in its view, the letter was an agreement to agree. Moreover, even if it was an enforceable agreement, the plaintiffs never performed because they never obtained permanent financing or provided performance bonds. CRDA asserts that it never made a clear and definite promise to the plaintiffs for a loan such that the second count asserting a promissory estoppel claim fails. Finally, the negligent misrepresentation claim fails, in the view of CRDA, because it was commenced outside of the limitation period provided by General Statutes § 52-584 and because CRDA did not make any misrepresentations.

The plaintiffs object on the grounds that material questions of fact exist as to whether the letter was intended to be a binding contract, and whether there was any breach thereof by CRDA. The second count sounding in promissory estoppel survives summary judgment, in the estimation of the plaintiffs, because the letter provided for a personal guarantee "or" a payment and performance bond. As to their negligent misrepresentation claim, the plaintiffs observe that § 52-584 is inapplicable here, and the misrepresentation in

the present case is that of providing financing if the plaintiffs provided a guarantee "or" payment and performance bond.

## LEGAL STANDARD

The legal standard governing summary judgment motions is well settled. "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried . . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534-35, 51 A.3d 367 (2012). "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996).

## DISCUSSION

With the governing legal standard in mind, the court now addresses the breach of contract, promissory estoppel, and negligent misrepresentation claims in turn.

### I

### COUNT ONE: BREACH OF CONTRACT

The court finds that CRDA has established a lack of any genuine issue of material fact as to the absence of an enforceable agreement. Specifically, the letter provided merely the contours of a potential deal that might, when reduced to a subsequent writing, result in a binding contract. "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages . . . . The interpretation of definitive contract language is a question of law . . . ." (Citation omitted; internal quotation marks omitted.) *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 133, 172 A.3d 1228 (2017). "A contract is not made so long as, in the contemplation of the parties, something remains to be done . . . ." (Internal quotation marks omitted.) *Santos* v. *Massad-Zion Motor Sales Co.*, 160 Conn. App. 12, 19, 123 A.3d 883, cert. denied, 319 Conn. 959, 125 A.3d 1013 (2015); see id. (lack of precise terms of confidentiality agreement to which parties agreed to integrate into settlement agreement, such as what information was protected, method of enforcement, and to whom settlement details could be disclosed, rendered settlement contract unenforceable). "So long as any essential matters are left open for further consider-

ation, the contract is not complete." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 535, 732 A.2d 181, (citing 17A Am. Jur. 2d, Contracts § 32 (1991)), cert. denied, 250 Conn. 901, 734 A.2d 984 (1999); see *L & R Realty* v. *Connecticut National Bank*, supra, 538 (agreement to subordinate loan which lacked terms and conditions was unenforceable). Where a writing is "no more than a statement of some of the essential features of a proposed contract and not a complete statement of all the essential terms," which terms require further development in an executed written contract, no enforceable agreement exists. *Westbrook* v. *Times-Star Co.*, 122 Conn. 473, 481, 191 A. 91 (1937). "Whether the parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish. . . . A consideration of these factors enables a court to determine if the informal contract . . . is enforceable or merely an intention to negotiate a contract in the future." (Citation omitted.) *Fowler* v. *Weiss*, 15 Conn. App. 690, 693, 546 A.2d 321, cert. denied, 209 Conn. 814, 550 A.2d 1082 (1988).

"Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Perricone* v. *Perricone*, 292 Conn. 187, 223, 972 A.2d 666 (2009). "[N]umerous Connecticut cases require definite agreement on the essential terms" in order to render the agreement enforceable. *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 845, 779 A.2d 174 (2001). Whether a term is essential turns "on the particular circumstances of each case." Id. Clearly, an essential term is one without which a party would not have entered into an agreement. See, e.g., *Hawley Avenue Associates, LLC* v. *Robert D. Russo, M.D. & Associates Radiology, P.C.*, 130 Conn. App. 823, 830-31, 25 A.3d 707 (2011) (no enforceable lease/contract where no agreement on precise location and shape of parking area and party would not have signed lease because dimensions were integral part of decision to enter into agreement). In *WiFiLand, LLP* v. *Hudson*, 153 Conn. App. 87, 107, 100 A.3d 450 (2014), an alleged settlement agreement between an internet service provider and its customers resolving a breach of contract action was held unenforceable where a confidentiality provision was an essential component of the agreement and the parties had failed to agree to the terms of the confidentiality provision. Similarly, a promise indicating an intent to make a future employment contract, absent an agreement on the material terms of employment, is not binding as a contract regardless of the promisor's partial performance. *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 628, 760 A.2d 969 (2000).

In accordance with these principles, the court considers the first *Fowler* factor and concludes that the letter was in the nature of an "agreement to agree," rather than an enforceable contract, because essential terms had yet to be agreed upon. The letter was self-described as "*a preliminary outline of general business terms of the potential project and are expressly subject to the completion of CRDA due diligence investigation* including the provisions of necessary documents as outlined below and the securing of complete financing for the Project. *This letter is not intended to create any legal liability for CRDA* and is to serve as an explanation of assistance to be provided by CRDA." (Emphasis added.) By its very language, it identified itself as merely setting out the framework of a future contract, the formal assistance agreement, whose terms were yet to be agreed upon. These terms include the contents of the final development budget and the project application that were to be incorporated in the assistance agreement as well as the unidentified terms of the assistance agreement. Additionally, the letter contemplated final approval by CRDA of as yet undrafted "plans and specifications." Finally, CRDA provided a nonexhaustive list of additional agreements, the terms of which were not specified, that the plaintiffs would be required to provide, including but not limited to "covenants" and "contractor agreements." The dispositive case law compels the conclusion that these yet to be determined agreements and terms renders the letter unenforceable as an "agreement to agree."

The plaintiffs suggest that *Connecticut Parking Services, LLC* v. *Hartford Parking Authority*, Superior Court, judicial district of Hartford, Docket No. CV-11-6018221-S (April 2, 2013), provides the court with an example of contract language that articulated an intent not to create a contractual obligation, which was ultimately found by the court to present questions of fact upon which summary judgment was denied. The reliance on this case is misplaced. In *Connecticut Parking Services, LLC*, language in a request for proposal that the parties would "enter into negotiations, *which may ultimately lead to a contract*" was raised by the defendant as an indication that the request for proposal was not an enforceable contract document. (Emphasis in original; internal quotation marks omitted.) Id. The court denied summary judgment in favor of the defendant on the grounds that the language had to be considered in the context of other language specifying that the terms in the request for proposal, in combination with other documents, represented the contract documents. Id. This case may be distinguished because a final agreement, to which the request for proposal was attached, was actually reached. In the present case it is undisputed that a formal assistance agreement between CRDA and DJS45 was never consummated.

The court therefore grants summary judgment to CRDA on the first count of the complaint because the defendant has established the absence of material facts relative to the lack of essential terms, making the letter unenforceable.

## II

### COUNT TWO: PROMISSORY ESTOPPEL

The defendant also claims entitlement to summary judgment on the second count, which asserts liability against the CRDA for promissory estoppel. "[U]nder the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." (Internal quotation marks omitted.) *McClancy* v. *Bank of America, N.A.*, 176 Conn. App. 408, 415, 168 A.3d 658, cert. denied, 327 Conn. 975, 174 A.3d 195 (2017). "Under our [well established] law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 268, 690 A.2d 368 (1997).

The promise which the plaintiffs seek to enforce is none other than the act of extending a loan in an amount in excess of $500,000. The letter, however, premised the financing on a number of contingencies which, in the aggregate, rendered the promise to loan $500,000 or more tentative, rather than definite. These included CRDA's due diligence investigation, agreement of the terms, execution of a formal assistance agreement, the plaintiffs' obtaining permanent financing, and the execution of other unspecified documents. Simply put, there was no definite promise to loan the plaintiffs over $500,000, and, accordingly, summary judgment as to this claim is appropriate.

The plaintiffs assert that the promise upon which they relied was for the extension of the loan upon the provision of either a guarantee or a payment and performance bond. In the plaintiffs' view, the later insistence by CRDA on an onerous payment and performance

bond for each of [their] contractors from an insurance company with a Best Rating of A- VII or, alternatively, that each of the plaintiffs' contractors provide the same is different from what was indicated in the letter, which provided for a guarantee preferred by the plaintiffs "or" a performance and payment bond, works an injustice and caused them injury.[3] This ignores that this was only one of many contingencies that were required to be met before a loan was made. Moreover, the letter employed the disjunctive "or" between the two possibilities of the provision of a guarantee and a payment and performance bond without articulating which of the parties were permitted to elect the manner in which CRDA would be assured of the completion of the project in a lien free state. There is nothing in the record before the court which demonstrates that the plaintiffs exercised any diligence to determine the truth of which or lacked any reasonably available means of acquiring this knowledge. See *Chotkowski* v. *State*, supra, 240 Conn. 268. Summary judgment is therefore granted as to the second count.

### III

COUNT THREE: NEGLIGENT MISREPRESENTATION

The last theory of liability upon which summary judgment is sought is that contained in the third count of negligent misrepresentation. The elements of an action for negligent misrepresentation are "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 351-52, 71 A.3d 480 (2013).

CRDA asserts that the plaintiffs' action is barred by the statute of limitations. The following additional information is required [for a] discussion of this argument. The CRDA's motion for summary judgment was filed on October 23, 2017, and raised the bar of the statute of limitations. On November 14, 2017, the plaintiffs filed a request for leave to amend the complaint pursuant to Practice Book § 10-60(a) (3) and alleged that the plaintiffs would be required to obtain payment and performance bonds for each of [their] contractors from an insurance company licensed to do business in Connecticut with a " 'Best Rating of A- VII' " or, in the alternative, each of the plaintiffs' contract[or]s would be required to obtain similar bonding. The defendant is alleged to have failed to provide the plaintiffs with the necessary information in a commercially reasonable time, including form agreements and closing checklist when it had a duty to disclose the material facts within a commercially reasonable time after the plaintiffs' receipt of the letter. Thereafter, on March 5, 2018, the plaintiffs amended their first special defense to . . . allege that

the applicable statute of limitations is tolled by the course of conduct doctrine.

In the plaintiffs' view, the applicable statute is § 52-584, which applies to negligence actions seeking damages for injury to the person or real or personal property.[4] Section 52-584 contains both a discovery and repose limitation wherein applicable actions are barred two years from the date of discovery of injury but in no event more than three years from the act or omission complained of. The [defendant] claim[s], and the court agrees, that, to the contrary, the applicable statute of limitations is that of General Statutes § 52-577, which provides that: "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The court is mindful that, in *Lombard* v. *Edward J. Peters, Jr., P.C.*, 79 Conn. App. 290, 830 A.2d 346 (2003), the Appellate Court held that a claim of negligent misrepresentation was subject to the limitations contained in § 52-584. The dispositive issue for the *Lombard* court, however, was that the "plaintiffs' claim is predicated on injury to their personal property caused by negligence . . . ." Id., 299. In the present case, however, the plaintiffs' negligent misrepresentation claim asserts economic loss rather than injury to person, real property or personal property.

This court aligns itself with that body of case law that holds that the dispositive issue relative to which of the two statutes applies is the nature of the injury claimed. See, e.g., *Teal Associates, LLC* v. *Alfin*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X04-CV-12-6028814-S (September 5, 2014) (§ 52-584 applies only to actions to recover damages for injury to person or property); *Evans* v. *Province*, Docket No. CV-07-600855, 2008 WL 3916445 (Conn. Super. August 4, 2008) (*Lombard*'s holding is limited to claims of negligent misrepresentation that allege injuries to either person or property). The applicable limitation period is thus the three year period contained in § 52-577.

Section 52-577 is an occurrence statute which runs from the date of the defendant's conduct, not the date that the plaintiff first discovered the injury. See *Watts* v. *Chittenden*, 301 Conn. 575, 583, 22 A.3d 1214 (2011). The date of the defendant's conduct is May 10, 2013, the date of issue of the letter. According to the return of service contained in the court's file the action was commenced on July 26, 2016.[5] The commencement of the action was thus more than three years from the act complained of, to wit, the misrepresentations contained in the letter.

The plaintiffs, however, assert that the limitation period is tolled by the continuing conduct doctrine as alleged in their special defense. Moreover, the plaintiffs

remark that "the defendant, which of course has the burden of proving the absence of any issue of material fact, completely fails to address the continuing course of conduct doctrine, and accordingly summary judgment should be denied." Entry No. 147, p. 3. The plaintiffs, who presumably relied on the CRDA's lack of argument as to the continuing course of conduct doctrine, themselves provided no analysis of why the limitations should be extended by the doctrine.

The plaintiffs misapprehend the nature of the shifting burden attendant to the tolling of [a] statute of limitations. "Typically, in the context of a motion for summary judgment based on a statute of limitations special defense, a defendant . . . meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . Then, if the plaintiff claims the benefit of a provision that operates to extend the limitation period, the burden . . . shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . In these circumstances, it is incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact [as to the timeliness of the action] exists." (Citations omitted; internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 192, 177 A.3d 1128 (2018). Thus, the burden to rebut the statutory limitations bar shifts to the plaintiff to demonstrate an issue of fact. This they have declined to do. Although the court need not consider an argument neither argued nor briefed; see *Hoenig* v. *Lubetkin*, 137 Conn. 516, 524, 79 A.2d 278 (1951); it will address the assertion of tolling by the continuing conduct doctrine.

In evaluating the continuing course of conduct doctrine in the context of a summary judgment motion the court must determine whether there is a genuine issue of material fact with respect to whether "the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 313, 94 A.3d 553 (2014), citing *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 370, 746 A.2d 753 (2000). As the plaintiffs assiduously point out in their briefing, the nature of the third count is a claim for negligent misrepresentation. See Entry No. 147, p. 5. The court notes that a violation of a duty to disclose is not asserted. Moreover, the plaintiffs provide no authority for the proposition that an actor, having made a negligent misrepresentation, has a continuing duty to correct the misrepresentation. There is, for example, no claim of the existence of a special relationship between the plaintiffs and the CRDA such that a fidu-

ciary duty existed. *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 86, 873 A.2d 929 (2005). Moreover, the plaintiffs have not directed the court's attention to any conduct that constituted a continual breach of a duty to make accurate representations of fact—such as repetition over time of the misrepresentation. See *Teal Associates, LLC* v. *Alfin*, supra, Superior Court, Docket No. X04-CV-12-6028814-S (series of misrepresentations tolled statute of limitations). The court concludes that no genuine issue of material fact exists with respect to the bar of the limitations imposed by § 52-577 and grants summary judgment as to the third count.

## IV

## CONCLUSION

For the foregoing reasons summary judgment is granted in favor of the defendant, CRDA, on all three counts of the plaintiffs' complaint.

* Affirmed.    Conn. App.    ,    A.3d    (2021).

[1] See General Statutes § 32-600 et seq.

[2] The letter provided that "CRDA assistance is contingent on the Sponsor successfully securing permanent financing from other sources [in the amount of $1,055,000] to reduce the CRDA construction loan assistance and to fully fund the Project's costs." It also contemplated the award of a Connecticut Historic Tax credit in the amount of $195,131.

[3] The plaintiffs' November 14, 2017 amended complaint added the heretofore not included allegations that the defendant failed to provide the plaintiffs with necessary information in a commercially reasonable time including the form agreements until September, 2013, and the closing checklist until December, 2013, including the additional condition of the type of bonding required. These new allegations implicate only the manner in which CRDA's later conduct deviated from the original promise sought to be enforced and do not affect the analysis herein.

[4] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[5] An action is commenced when the writ of process is served on the defendant. *Rocco* v. *Garrison*, 268 Conn. 541, 549, 848 A.2d 352 (2004). Courts may take judicial notice of the contents of their files. *In re Jeisean M.*, 270 Conn. 382, 402, 852 A.2d 643 (2004).